**CENTRAL SUFFOLK HOSPITAL,
Plaintiff,**

v.

**Donna SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. CV 91–0301.**

United States District Court,
E.D. New York.

Jan. 19, 1994.

O'Connell & Aronowitz by Cornelius D. Murray, Albany, NY, for plaintiff.

Zachary W. Carter, U.S. Atty. by Christopher G. Lehmann, Asst. U.S. Atty., Brooklyn, NY, for defendant.

**494**

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

Plaintiff Central Suffolk Hospital ("plaintiff" or "CSH") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b) to appeal the final determination of defendant Secretary of Health and Human Services (the "Secretary") denying CSH's application for certification as a skilled nursing facility ("SNF") provider under the Medicare program for its new 60-bed skilled nursing facility as of August 7, 1987, rather than March 11, 1988, the date determined by the Secretary. Presently before the Court are plaintiff's motion for summary judgment and the Secretary's cross-motion for judgment on the pleadings. For the reasons below, plaintiff's motion for summary judgment is denied, and the Secretary's cross-motion for judgment on the pleadings is granted.

## I. BACKGROUND

The material facts in the record can be briefly summarized as follows. CSH is a hospital licensed by the State of New York, and is located in Riverhead, New York. In the mid-1980's, CSH built a new 60-bed skilled nursing facility ("CSH-SNF") at its existing facility.

Since the 1960's, CSH has participated in the federally-established Medicare program, a federal health insurance program established by Congress pursuant to the federal Social Security Act, 42 U.S.C. § 1395 *et seq.* Under Medicare, individuals who satisfy certain qualifications are entitled to receive certain health benefits, including SNF services as defined in 42 U.S.C. § 1395i-3. Providers which render such services to Medicare-eligible individuals are entitled to reimbursement for such services at rates established by HHS if such providers are certified as participants under Medicare by entering into a "provider agreement" with HHS.

Pursuant to 42 U.S.C. § 1395aa(a), HHS contracted with the New York State Department of Health ("DOH") for DOH to survey, on behalf of HHS, providers in New York seeking to participate under Medicare. As the state survey agency for HHS, DOH was required to determine whether the conditions for participation, as established under federal law, are satisfied by a provider and to make its recommendation to HHS's Health Care Financing Administration ("HCFA"), which was charged with the responsibility for determining whether to accept a provider as a participant and to offer such provider a provider agreement.[1]

In 1987, prior to its opening, CSH-SNF applied for an operating license from New York State, and also sought to participate in the Medicare program. Inspectors from DOH surveyed CSH-SNF on July 10, 1987, and found that CSH-SNF was not in substantial compliance with state and federal regulations. A subsequent survey by DOH on July 29, 1987 revealed continuing noncompliance with state and federal regulations. However, upon a survey of CSH-SNF on August 6, 1987, DOH found CSH-SNF to be in substantial compliance with state and federal regulations.

By letter of August 24, 1987, DOH advised CSH-SNF that it was issuing CSH-SNF a New York State operating certificate, and that CSH-SNF could proceed to open. The effective date of the operating certificate was August 7, 1987. The August 24 letter also advised that a "recommendation" was being made by DOH to HHS that CSH-SNF be issued a provider agreement under Medicare with an effective date of August 7, 1987. However, the letter explicitly warned: "Should you choose to admit Medicare ... patients prior to official notification by [HHS], you do so at your own financial risk."

Thereafter, CSH-SNF opened and began admitting Medicare patients without having first been accepted as a participant under

1. 42 C.F.R. § 405.1902(b), governing "State survey agency review" provides, in relevant part:
   (b) *Effect of State agency certification.* Certifications by the State survey agency represent recommendations to HCFA.
      (1) On the basis of these recommendations, HCFA will determine whether:

   (i) A provider or supplier is eligible to participate in or be covered under the Medicare program; ....
      (2) Notice of HCFA's determination will be sent to the provider or supplier.

Medicare by entering a provider agreement with HHS. Meanwhile, by letter dated October 15, 1987, DOH notified HCFA that CSH–SNF had applied for participation under Medicare, and that CSH–SNF "is in compliance with Medicare requirements and we recommend that it be certified. Please issue a provider agreement beginning 8/7/87...."

Following the October 15, 1987 recommendation from DOH to HCFA, DOH completed another survey of CSH–SNF, during which time CSH–SNF was operational. This survey was completed on October 23, 1987. Based on this survey, DOH notified CSH–SNF, by letter dated November 19, 1987, that CSH–SNF was not in compliance with applicable state and federal regulations, and identified various deficiencies noted by DOH surveyors during that survey. *See* Tr. 702–36.

Thereafter, by letter dated December 14, 1987, HCFA notified CSH–SNF that it had determined that CSH–SNF "is not eligible to participate as a provider of services in [Medicare]." In this respect, the December 14, 1987 letter states:

Our review of the documentation submitted by [DOH] in connection with your Medicare application has found that your facility is not in compliance with the following Conditions of Participation:

42 CFR 405.1121—Governing Body and Management

42 CFR 405.1125—Dietetic Services

To participate as a provider of services in the Medicare program, a skilled nursing facility must be in compliance with each of the Conditions of Participation established by the Secretary of Health and Human Services, prior to acceptance into the Medicare program.

In the letter, HCFA advised CSH–SNF that it may take steps to correct the problems and reapply to establish eligibility.

Following the October 23, 1987 survey, DOH continued to conduct inspections at CSH–SNF. Based on a survey on January 22, 1988, DOH again found dietetic services at CSH–SNF not in compliance with Medi-

care conditions of participation. DOH next conducted a survey in March 1988, at which time the facility was found to be in compliance with Medicare conditions of participation.

Thereafter, DOH again sent a recommendation to HCFA for review. By letter dated April 4, 1988, DOH recommended to HCFA that it accept CSH–SNF as a participant under Medicare effective March 11, 1988. Subsequently, by letter dated April 13, 1988, HCFA notified CSH–SNF that it determined that CSH–SNF satisfied the requirements for participation under Medicare, and issued CSH–SNF a provider agreement with an effective date of March 11, 1988.

In the meantime, plaintiff sought reconsideration of HCFA's December 14, 1987 denial of its application for CSH–SNF's participation in Medicare. Upon reconsideration by HCFA, the application was again denied in a letter from HCFA to plaintiff dated March 30, 1988. After receiving the HCFA's April 13, 1988 letter granting CSH–SNF's application for participation with an effective date of March 11, 1988, plaintiff requested a hearing before an HHS administrative law judge ("ALJ") to challenge HCFA's determination denying participation under Medicare as of August 7, 1987.

Following a March 1989 hearing, the ALJ rendered a decision dated July 31, 1989 upholding HCFA's determination with respect to the effective date of the provider agreement for CSH–SNF. Tr. 12–21. Plaintiff then appealed the ALJ's July 31, 1989 decision to the HHS Appeals Council. By decision dated November 28, 1990, the Appeals Council upheld the ALJ's July 31, 1989 decision and adopted the findings and conclusions of the ALJ. Tr. 5–10.

Plaintiff thereafter instituted this action for judicial review of the Secretary's final determination denying CSH–SNF's acceptance into the Medicare program for the period from August 7, 1987 to March 10, 1988.[2] This Court heard oral argument on the pending motions on November 23, 1993, and reserved decision.

---

**2.** Plaintiff claims that for the period August 7, 1987 to March 10, 1988, it is entitled to $651,- 067.32 in Medicare reimbursements that have not been paid.

## II. *DISCUSSION*

█ This Court is required to uphold the decision of the Secretary unless the Secretary's decision, based on the record established before the agency, is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or if the action failed to meet statutory, procedural or constitutional requirements. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 821–23, 28 L.Ed.2d 136 (1971); *Pappas v. Bowen,* 863 F.2d 227, 230 (2d Cir.1988); Administrative Procedures Act, 5 U.S.C. § 706(2).

█ In support of its challenge to the Secretary's decision, plaintiff contends that the Secretary was required to accept CSH–SNF as a participant under Medicare, effective August 7, 1987, based on DOH's August 6, 1987 survey (which found CSH–SNF in substantial compliance with Medicare conditions of participation at that time) and October 14, 1987 "recommendation" that a provider agreement be issued to CSH–SNF with an effective date of August 7, 1987. In support of this contention, plaintiff relies principally on 42 C.F.R. § 489.13(a), which is found in the regulations governing "Provider Agreements Under Medicare" (*see* 42 C.F.R. Part 489), and which provides:

(a) *All Federal requirements are met on the date of the survey.* The [provider] agreement will be effective on the date the onsite survey is completed ... if, on the date of the survey, the provider meets all Federal health and safety conditions of participation or level A requirements (for SNF's), and any other requirements imposed by HCFA.

Plaintiff contends that the Secretary violated § 489.13(a) in denying plaintiff's request to be certified as of August 7, 1987, "the day it [was] found to meet all the conditions of participation." Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment ("Pl. Mem."), at 3. According to plaintiff's reasoning, because HCFA denied the initial application based solely on the October 23 survey results, and deficiencies found in the October 23 survey do not establish that those deficiencies existed as of August 7, 1987, HCFA had no basis for denying certification as of August 7, 1987. Apparently, plaintiff does not dispute the Secretary's authority to reject a recommendation, but maintains that because the Secretary did not provide a basis for rejecting the August 6, 1987 survey results, it was required to grant certification effective as of August 7, 1987.

In further support of its position, plaintiff argues that an HCFA official acknowledged that "the policy of the HHS was to delay certification until after a survey is conducted when the facility is operational and that the August 6, 1987 survey by State Health Department officials occurred before the [CSH–SNF] was opened." Pl. Mem. at 13. Plaintiff refers to the testimony of Anne Marie Schmidt ("Schmidt"), an HCFA official responsible for certification of Medicare providers, wherein she stated that under former HCFA policy there was "no prohibition against what we would call pre-opening surveys. The current policy does require that the facility be operational." Tr. 58. Schmidt referred to § 1014 of the "State Operations Manual," which provides:

RELATIONSHIP OF SURVEY DATE TO DATE OF INITIAL MEDICARE APPROVAL

An institution cannot begin to have its services covered and reimbursed by Medicare until the date on which it is found, via the certification process, to be in compliance with *all* applicable Conditions of Participation if it is a provider.... Since it usually is impossible to schedule and complete a survey, *i.e.,* ascertain actual compliance with all applicable requirements, on the date a new institution opens its doors, a new institution generally must operate for some short initial period without Medicare reimbursement for its services.

The State Operations Manual is an "internal manual providing guidance to the state surveying agencies about Medicare procedures." Defendant's Memorandum of Law in Opposition to Motion for Summary Judgment ("Def. Mem.") at 19 n. 4.[3] It is undisputed that

---

**3.** Plaintiff asserts that Schmidt could not state when this policy came into effect. Pl.Mem. at

**13.** However, Schmidt testified that the policy

during the relevant time, there was no regulation explicitly requiring a "post-opening" survey before certification may be granted or precluding certification based solely on a "pre-opening" survey.

Plaintiff maintains that this "change in policy" could not formally be implemented without adhering to the formal rule-making procedures of the Administrative Procedure Act ("APA"), and therefore could not be applied to CSH–SNF. Pl. Mem. at 21. In addition, plaintiff maintains that state officials involved in the certification process testified at the hearing that "they were not aware of such a change in policy and indicated that the [DOH's] understanding was that the purpose of the August 6, 1987 survey was to determine whether the facility was in compliance with federal conditions of participation so that it could be certified." Pl.Mem. at 13–14.

Notably, plaintiff claims that certification should be effective for the entire period between August 7, 1987 and March 10, 1988, despite the deficiencies found in the October 23, 1987 survey. Plaintiff maintains that those alleged deficiencies would not have led to decertification had CSH–SNF already been certified based on the October 14, 1987 recommendation, and that DOH officials believed that CSH–SNF had already been certified as of the October 23, 1987 survey. This contention is supported by the November 19, 1987 letter from DOH to HCFA, since the letter refers to the potential imposition of "intermediate sanctions" on CSH–SNF. Intermediate sanctions could not apply unless CSH–SNF was already participating as a provider in the Medicare program. In addition, William Carmello, who was the Director of the Bureau of Health Facility Coordination and the DOH official who signed the November 19 letter, testified that he was under the impression that CSH–SNF was already certified by that time. Tr. 350.

In support of the Secretary's decision, the Secretary argues that HCFA is not required to issue a provider agreement solely because DOH makes a "recommendation" to HCFA that the applicant meets the conditions of participation. The Secretary explains that in addition to the conditions of participation which DOH considers, the Secretary considers other criteria before issuing an acceptance to a provider.[4] The Secretary argues that § 489.13(a), upon which plaintiff relies, simply governs *when* the provider agreement (once issued) becomes effective," Def. Mem. at 17, but does not require HCFA to issue a provider agreement based on the state agency's recommendation. Relying on § 489.13(b),[5] the Secretary argues that a facility will not be accepted into the Medicare program until after HCFA determines that all requirements for certification are met and the provider is notified by HCFA that it is in compliance with all requirements and is offered a provider agreement.

Here, according to the Secretary, multiple surveys had been submitted to HCFA by DOH prior to any action by HCFA on CSH–SNF's application, and the "more recent" survey indicated non-compliance with the conditions of participation. Thus, HCFA determined that the facility had not met the requirements of certification. Def. Mem. at 18. As for plaintiff's argument concerning a "change in policy," the Secretary maintains that "HCFA's actions were consistent with [§ 1014] only because the state's post-opening survey revealed problems with the facility." Def.Mem. at 19 n. 4.[6] The Secretary

set forth in § 1014 came into existence in approximately 1985. Tr. 70.

**4.** These other criteria, according to the Secretary, include for example: (1) whether the applicant meets civil rights requirements, § 489.-10(a)(2); and (2) whether the facility properly disclosed its ownership and control, § 489.-12(a)(2).

**5.** Section 489.13(b) provides:

(b) *All Federal requirements are not met on the date of the survey.* If the provider fails to meet any of the requirements specified in para-

graph (a) of this section, the agreement will be effective on the earlier of the following dates:

(1) The date on which the provider meets all requirements.

(2) The date on which the provider submits a correction plan acceptable to HCFA or an approvable waiver request, or both.

**6.** The Secretary also contends that the "[state surveyors] do not appear to have been guided by [§ 1014 of the State Operations Manual] as they surveyed the facility *before* and *after* the opening." Def. Mem. at 19 n. 4. This contention is consistent with plaintiff's contention, as noted

argues that regardless of § 1014, plaintiff's facility could not have been Medicare certified based on the results of the "most recent" on-site survey available to HCFA (*i.e.*, the October 23, 1987 survey) when it denied plaintiff's application (as per the December 14, 1987 letter). *Id.* at 18, 19 n. 4.

Based on a review of the record, this Court finds that the Secretary's decision was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Nor did the Secretary's action fail to meet statutory, procedural or constitutional requirements. Contrary to plaintiff's contention, the Secretary was not required to grant certification to CSH–SNF effective August 7, 1987, based on DOH's October 15, 1987 "recommendation," despite the October 23, 1987 survey results. Although plaintiff apparently believes CSH–SNF became entitled to certification effective August 7, 1987, plaintiff points to no authority, and this Court has discovered none, which would support an entitlement to certification as a Medicare provider on the basis of the state survey agency's "recommendation" of certification. Accordingly, the Secretary was not required to treat CSH–SNF as a participating provider and to then determine what effect, if any, the results of the subsequent October 23 post-opening survey would have on CSH–SNF as a participating provider. Likewise, the Secretary was not required to justify denial of CSH–SNF's application without reference to the October 23 survey results.

Even accepting plaintiff's argument that any "change in policy" by the HCFA to require a post-opening survey could not be effective or enforceable because of failure to adhere to the rule-making procedures of the APA, the evidence in the record does not establish that HCFA delayed its decision on CSH–SNF's application pending the results of a post-opening survey,[7] that HCFA requested DOH to conduct a post-opening survey, or that DOH conducted the October 23, 1987 post-opening survey in reliance on a "change in policy."

above, that the DOH officials involved in the certification process testified that they were not aware of such a change in policy when they acted.

Nor does this Court find that a different result is warranted even if, as plaintiff contends, Pl.Mem. at 28, the deficiencies found in the October 23, 1987 survey would not have led to decertification of the facility from the Medicare program had it already been accepted. Plaintiff cites no authority to support its apparent claim that deficiencies that are not sufficient to decertify an institution are not sufficient to prevent certification initially.

Moreover, as noted above, in issuing the state operating certificate to CSH–SNF, DOH explicitly warned plaintiff: "Should you choose to admit Medicare ... patients prior to official notification by [HHS], you do so at your own financial risk." Obviously, plaintiff accepted this risk and cannot now avoid the harsh results of admitting Medicare patients without first awaiting acceptance by the HCFA.

### CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment is denied, and the Secretary's cross-motion for judgment on the pleadings is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant Secretary, upholding the Secretary's determination and dismissing plaintiff's action. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

7. Indeed, the record demonstrates that there was a short delay in HCFA's determination of the application due to CSH–SNF's failure to designate a fiscal intermediary. Tr. 61–62, 73–74.